# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| TWIN RIVER-TIVERTON, LLC d/b/a TIVERTON CASINO HOTEL, | : : : : |
| Plaintiff | : : |
| v. | : Case No. |
| UNITED AUTO WORKERS, LOCAL #7770, | : : : |
| Defendant | : : |

## COMPLAINT TO VACATE ARBITRATION AWARD

1. Plaintiff, Twin River-Tiverton, LLC d/b/a Tiverton Casino Hotel ("Casino"), is a Delaware limited liability company registered and doing business in Rhode Island, with a principal place of business located at 777 Tiverton Casino Boulevard, Tiverton, Rhode Island 02878, and is an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 185.

2. Defendant, United Auto Workers, Local #7770 ("Union"), is an unincorporated association and labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185. The Union maintains a principal place of business in Rhode Island.

3. This is a complaint to vacate a labor arbitration award, and as such, jurisdiction exists under the Labor Management Relations Act, 29 U.S.C. § 185, federal question jurisdiction, 28 U.S.C. § 1331, and the pendent jurisdiction of this Court.

4. Venue is proper in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 185.

5. The Union and the Casino are parties to a collective bargaining agreement ("CBA") governing the terms and conditions of employment of bargaining unit employees who are employed in various departments and job classifications at the Casino. The CBA has a term covering the period from January 1, 2017 to December 31, 2021. A true and accurate copy of the CBA, marked as **Exhibit A**, is attached hereto and made a part of this complaint.

6. The CBA was entered as a joint exhibit of the parties at the arbitration hearing that ultimately gave rise to the instant action.

7. Among other provisions, the CBA specifically provides:

> Section 14.10  Work Breaks. All employees shall receive a twenty (20) minute paid break for any shift up to six (6) hours or more and an additional twenty (20) minute break beyond six (6) hours up to eight (8) hours. Employees who work eight (8) hours or more in one day shall be entitled to a one-half hour paid lunch/dinner break.

8. Regarding shift length and work schedules, the CBA provides, in relevant part, that "The EMPLOYER reserves the right itself . . . to determine the schedules of work including holidays . . . and at all times to determine the number of Employees it requires and will employ in the various departments and job classifications covered by this contract, and EMPLOYER shall not be obligated to employ any number of Employees in excess of what the EMPLOYER deems necessary."

9. In March 2019, the Casino decided to reduce the regular daily work shift length for most bargaining unit employees from 8 hours to 7.5 hours.

10. On March 13, 2019, eleven (11) days prior to the date the shift length change was to be implemented, Joseph Moore, the Casino's Vice President and General Manager, sent written email notification to Cathleen Rayner, the Union's President, that "[a]ll departments will

2

be making adjustments to their schedules starting on Sunday, March 24, 2019," and that "[s]ome employees will see a decrease in total hours worked for the week."

11. The Subject line of Mr. Moore's March 13, 2019 email to Ms. Rayner is "**Breaks / Hours**," and the full text of the email states as follows:

> Cathy,
>
> I want to notify you that we are working towards a goal that all employees receive their allotted breaks within their work day.
>
> All departments will be making adjustments to their schedules starting on Sunday, March 24, 2019. Some employees will see a decrease in total hours worked for the week.
>
> Thanks
>
> Joe

12. Mr. Moore's March 13, 2019 email to Ms. Rayner was entered as a joint exhibit of the parties at the arbitration hearing that ultimately gave rise to the instant action.

13. Ms. Rayner provided testimony on behalf of the Union at the arbitration hearing.

14. Although Ms. Rayner acknowledged receiving the March 13, 2019 email from Mr. Moore at the time it was sent, she did not request bargaining on behalf of the Union regarding the matter, nor did she attempt to initiate any substantive discussions with the Casino about it.

15. In addition to the email notice to Ms. Rayner, the Casino also endeavored to provide employees direct notice of the upcoming work schedule changes through verbal communications from its various department managers, and by posting the new schedules in advance of the March 24, 2019 effective date.

16. Despite the ample advance notice provided by the Casino regarding the adjustments to work schedules, the Union filed an unfair labor practice charge with the National

Labor Relations Board, in which it alleged, in relevant part, that "[t]he Casino has made unilateral changes to the contract, including routinely refusing to provide or pay for breaks."

17. Notably, however, the Union did not initially file a grievance regarding the work schedule changes, presumably because the Casino plainly has the contractual right to alter employee work schedules and hours under the CBA.

18. On June 18, 2019, the Union filed an amended charge with the National Labor Relations Board in which it made the following additional allegations against the Casino: "In about late March 2019, the [Company] unilaterally reduced the shift hours of unit employee[s] from 8 hours to 7.5 hours without notifying or bargaining with the Union and in order to retaliate against the Union for filing a grievance over its prior failure to pay employees for the contractually required 30-minute lunch break."

19. The Casino submitted its position statement in response to the Union's amended unfair labor practice charge on August 8, 2019.

20. On August 21, 2019, the National Labor Relations Board deferred further proceedings on the Union's unfair labor practice charge to the grievance and arbitration procedure contained in the parties' CBA.

21. The Board's August 21, 2019 deferral letter states, in pertinent part, as follows:

> **Decision to Defer**: Based on our investigation, I am deferring further proceedings on the charges in this matter to the grievance/arbitration process for the following reasons:
>
> 1. The Employer and [the Union] have a collective bargaining agreement currently in effect that provides for final and binding arbitration.
>
> 2(a) Regarding Case 01-CA-239647, the allegations that the Employer unilaterally eliminated the 30-minute lunch break pay for bargaining unit employees [and] unilaterally reduced the shift hours from 8 hours to 7.5 hours . . . are

4

>   encompassed by the terms of the collective bargaining agreement.

22. The Board's deferral letter was entered as a joint exhibit of the parties at the arbitration hearing that ultimately gave rise to the instant action.

23. The Union did not appeal the Board's decision to defer the matter to the grievance and arbitration procedure of the CBA.

24. Instead, on September 6, 2019, the Union filed a grievance via email, under the following **Subject** heading: Reduction in Shift hours Grievance. The text of the Union's grievance states as follows:

>   Joe,
>
>   The Union is grieving the reduction in scheduled shift hours for all affected Bargaining Unit members. The reduction in hours was implemented in the interest of the efficient operation of the business and is therefore a violation of the CBA. Cathy and I am available to meet on September 19th for this grievance as well if you are available, if not please forward dates and times that would work you are available.
>
>   In Solidarity,
>
>   Andrea Goodrich

25. The Casino denied the Union's grievance.

26. The matter proceeded to arbitration, and an arbitration hearing was held before Arbitrator Craig E. Overton on December 30, 2019.

27. Each party submitted a post-hearing brief. A true and accurate copy of the Casino's post-hearing brief, marked as **Exhibit B**, is attached hereto and made a part of this complaint.

28.     On or about February 29, 2020, Arbitrator Craig E. Overton issued a written Opinion and Award on the Union's grievance.  A true and accurate copy of the Opinion and Award, marked as **Exhibit C**, is attached hereto and made a part of this complaint.

29.     In his Opinion and Award, Arbitrator Overton framed the issue for his consideration as follows:  "Did the Employer violate the Collective Bargaining Agreement by eliminating the 30-minute lunch break for bargaining unit employees and/or reducing the shift hours from 8 hours to 7.5 hours?  If so, what shall be the remedy?"

30.     Although Arbitrator Overton quoted the text of several applicable CBA provisions in his Opinion and Award, his interpretation of those provisions, including Section 4.1 (Management's Rights) and Section 14.10 (Work Breaks), is irrational and illogical, and contrary to the plain and unambiguous language contained in the CBA.

31.     Although Section 14.10 of the CBA clearly and unambiguously provides that only employees "who work eight (8) hours or more in one day shall be entitled to a one-half hour paid lunch/dinner break," Arbitrator Overton illogically and irrationally construed that provision to mean that employees are entitled to an additional thirty (30) minutes of **pay**, not break time, which additional pay is a contractual benefit that "must remain intact until it is negotiated away."

32.     Contrary to well-established labor arbitration principles, Arbitrator Overton ignored the plain and unambiguous language of Section 14.10 and applied "past practice" to determine that Section 14.10 really means that any employee who is scheduled to work 8 hours or more is entitled to an additional 30 minutes of **pay**, as opposed to a 30 minute lunch/dinner break.

33.     Having determined – contrary to the clear language contained in the CBA – that all employees scheduled to work 8 hours or more are entitled to an additional 30 minutes of pay,

Arbitrator Overton further disregarded the contract language he was duty-bound to interpret and rationally construe by opining that as a benefit, the 1/2 hour additional pay "can only be eliminated via the collective bargaining process or by clearly proving that for this benefit to continue would affect the efficiency and continued existence of the operation."

34. Based on this faulty standard of proof that is not derived from any provision contained in the CBA and which Arbitrator Overton created solely on his own, Arbitrator Overton determined that the Casino had furnished insufficient evidence "to justify its reduction in scheduled work hours from 8 to 7.5," and therefore violated the CBA.

35. Although he determined that employees scheduled to work a shift of 8 or more hours are entitled to an additional 30 minutes **pay** (rather than a 30-minute **break** as stated in Section 14.10 of the CBA), Arbitrator Overton nevertheless issued the following Award: "The [Casino] violated the [CBA] by eliminating the 30-minute lunch break for bargaining unit employees and reducing the shift hours from 8 to 7.5 hours."

36. Contrary to Arbitrator Overton's analysis and conclusion, the Casino did not eliminate the 30-minute lunch break for bargaining unit employees who work 8 hours or more in one day.

37. Contrary to Arbitrator Overton's analysis and conclusion, there are no provisions contained in the CBA that require justification for the Casino to reduce or otherwise adjust shift hours.

38. Contrary to Arbitrator Overton's analysis and conclusion, there are no provisions in the CBA that restrict the Casino's right to determine work schedules and/or shift length, nor are there any provisions in the CBA that require work shifts of any particular duration.

39. Section 4.1 of the CBA, the management's rights provisions, states in relevant part that the right "to determine the schedules of work including holidays . . . and at all times to determine the number of Employees it requires and will employ in the various departments and job classifications covered by this contract" is specifically reserved to the Casino.

40. Section 17.1(n) of the CBA also reflects the Casino's unrestricted right to determine shift hours.

41. The grievance and arbitration procedure contained in the parties' CBA provides, in part: "The arbitrator shall not have any authority to amend or modify this Agreement, nor to establish new terms or conditions of employment, nor to add to, subtract from, or otherwise enlarge upon or unduly restrict this Agreement."  CBA, § 7.4.

42. In rendering his Opinion and Award, Arbitrator Overton made irrational and illogical determinations and conclusions and disregarded the plain language of Sections 4.1, 7.4, 14.10, 17.1(n) and other relevant provisions of the CBA.

43. Arbitrator Overton's Opinion and Award is illogical, contrary to plain and unambiguous contract language, unfounded in reason and fact, in manifest disregard of the facts and applicable law, and constitutes the arbitrator's own brand of industrial justice.

44. Arbitrator Overton's Opinion and Award is clearly erroneous and does not constitute a passably plausible interpretation of the CBA.

45. Arbitrator Overton's Opinion and Award is wholly void, in that Arbitrator Overton exceeded his authority with respect to the interpretation and application of substantive provisions of the CBA.

46.     Unless the arbitrator's Opinion and Award is vacated, the Casino will suffer eminent and irreparable harm as it will be compelled to expend substantial money in excess of that mandated by the CBA.

WHEREFORE, Plaintiff, Tiverton Casino Hotel, requests that this Court enter an order:

a)   staying enforcement of the arbitrator's Opinion and Award;

b)   vacating and setting aside the arbitrator's Opinion and Award on the grounds that the Award is (1) in violation of the CBA, (2) irrational and illogical, (3) contrary to express findings, (4) contrary to the plain, unambiguous language of the CBA, (5) unfounded in reason and fact, (6) in manifest disregard of the facts and relevant provisions of the CBA, (7) representative of the arbitrator's own brand of industrial justice, and/or (8) in excess of the arbitrator's authority under the CBA;

c)   declaring the Opinion and Award invalid and unenforceable; and

d)   awarding Plaintiff such other relief as the Court deems just and proper.

TWIN RIVER-TIVERTON, LLC d/b/a
TIVERTON CASINO HOTEL
By its attorneys,

*/s/ Michael D. Chittick*
MICHAEL D. CHITTICK (#5967)
mchittick@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903-1345
Tel:  (401) 274-7200
Fax:  (401) 751-060

Dated:  May 5, 2020