## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

TWIN RIVER-TIVERTON, LLC, d/b/a )
TIVERTON TWIN RIVER HOTEL, )

    Plaintiff, )

    v. )         C.A. No. 20-202-JJM-PAS

UNITED AUTO WORKERS, LOCAL )
#7770, )

    Defendant. )

## ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

This case presents a dispute between a union and employer over the ruling by an arbitrator concerning a collective bargaining agreement and the law of the shop.

## I.   BACKGROUND

This matter is before the Court on a petition for judicial review of an arbitrator's award enjoining the Plaintiff, Twin River-Tiverton, LLC ("Employer"), from both (1) eliminating its prior practice of providing one-half hour pay to employees who work 8 or more hours per day and (2) reducing the shift hours of "most bargaining unit employees" (ECF No. 1 at ¶ 9) from 8 hours to 7.5.

The practice of providing pay instead of a 30-minute break predates the Employer's ownership of the casino where members of the Defendant United Auto Workers, Local #7770 ("Union") work.

Beginning in the late 1990's or 2000, collective bargaining agreements between Local 7770 and Newport Grand provided that employees who worked in excess of eight (8) hours received a one-half hour paid meal break. During the period 2004 to present, the meal break language was substantially unchanged. Despite the wording, employees were often too busy to take a meal break, and a practice developed that employees who worked eight (8) or more hours would receive one-half hour's pay rather than a break.

ECF No. 13 at ¶ 7.

At the time, the Union checked with the owner of Newport Grand (an earlier owner of the casino) to ensure that this was not a mistake. The owner confirmed that it was not, and that she wanted "everyone to have it." ECF No. 13 at ¶ 8 (citing Affidavit of Cathy Rayner at ¶ 5). In 2015, the casino was bought by Premier Entertainment, which continued this practice. *Id.* at ¶ 9. The casino was bought by the Employer, at which time the parties effectuated a new Collective Bargaining Agreement ("CBA") with the same provision relating to a 30-minute paid meal break for employees working at least 8 hours per day: "All Employees shall receive a twenty (20) minute paid break for any shift up to six (6) hours or more and an additional twenty (20) minute break beyond six (6) hours up to eight (8) hours. Employees who work eight (8) hours or more in one day shall be entitled to a one-half hour paid lunch/dinner break." ECF No. 1-2 at 32. After forming the new CBA, the Employer continued the practice, even after it moved the casino's operations to its current location in Tiverton, Rhode Island. ECF No. 12-1 at 3-4.[1]

---

[1] The Union also presented evidence at the arbitration hearing "that Twin River knew about the practice because its General Manager had previously been General Manager for Newport Grand." ECF No. 12-1 at 13.

On March 13, 2019, the Employer "unilaterally reduced the scheduled shift from eight to seven and one-half hours" and eliminated the practice of paying employees for 30 minutes-worked instead of them taking a 30-minute paid meal break. ECF No. 12-1 at 4.[2] This move came after a previous attempt to eliminate the practice that the Employer later backtracked on. *Id.* at 3-4 ("in September 2018, meal pay was taken away from non-grandfathered (i.e., new) employees. Local 7770 filed a grievance and eventually meal pay was reinstated, and the parties agreed to reimburse affected employees.").[3]   The Union then filed an "unfair labor practice charge" which went to arbitration under the CBA. ECF No. 13 at ¶ 15-16.

*The Arbitration Award*

The Arbitrator set out to determine whether the Employer violated the "[a]greement by eliminating the 30-minute lunch break for bargaining unit employees and/or [by] reducing the shift hours from 8 hours to 7.5 hours[.]"   ECF No. 1-4 at 5.

First, the Arbitrator held that meal pay was a past practice because it was "shown to be the . . . accepted way of doing something over an extended period of time."   ECF No. 1-4 at 24.   Moreover, it satisfied three additional conditions qualifying it as a "past practice": the practice was not "vague" or "ambiguous" and

---

[2] According to the Employer, the reason behind reducing employees' hours below eight hours was to "remove the issue of paid meal breaks altogether," because there is no dispute that employees working less than eight hours were not entitled to the one-half hour paid break or payment instead of the break. ECF No. 14 at 3-4.

[3] The 2019 decision affected all employees, not just new employees. ECF No. 13 at ¶ 14.

had not been "contradicted as often as it [had] been followed;" the practice had longevity; and both the employer and the employees had accepted it. *Id.* at 24-25. Accordingly, the Arbitrator found that 30-minute pay was "a benefit to which those employees are entitled to receive." *Id.* at 24.

Next, the Arbitrator determined that the reduction in hours from eight to seven-and-a-half was improper because the change was not made during collective bargaining. *Id.* at 25. The Arbitrator also found that the change could have been justified had the Employer proven that continuation of the one-half hour pay "would affect the efficiency and continued existence of the operation." *Id.* The basis for this standard was Article IV, Section 4.1 of the CBA, *see id.*, which reads, in relevant part: "The EMPLOYER reserves the right itself to . . . determine the schedules of work including holidays, to discipline Employees for just cause which, in the judgment of the EMPLOYER *may affect the efficient operation of the business . . . .*" *Id.* at 21 (emphasis added). According to the Arbitrator, the Employer did not present "one scintilla of evidence" showing that this effect would have occurred had the practice continued. *Id.* at 25.

Having determined that the Employer's actions violated the CBA, the Arbitrator ordered the Employer to "cease and desist" the reduction in hours and "make all employees whole for lost wages and benefits . . . ." *Id.* at 28 The Employer now appeals the Arbitrator's decision to this Court.

II.     STANDARD OF REVIEW

*Summary Judgment Standard*

When making a summary judgment determination, the Court should review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Intern. Group, Inc. v. Ferre Development, Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). However, when a court is presented with cross-motions for summary judgment, inferences must be

made in favor of the nonmoving party when deciding each motion separately. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

### Review of Arbitration Award Standard

Judicial review of labor arbitrations "is among the narrowest known in the law." *Maine Cent. R.R. Co. v. Bhd. of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir.1989). The court's task "is limited to determining if the arbitrator's interpretation of the contract is in any way plausible." *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001) (quoting *Labor Relations Div. of Constr. Indus. v. Int'l Bhd. Teamsters, Local No. 379*, 29 F.3d 742, 745 (1st Cir. 1994)). The rationale for this deference is two-fold–the arbitrator has expertise in "the law of the shop" and the parties have bargained to accept his interpretation of their agreement. *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 253-54 (1977).

Section 10(a) of the Federal Arbitration Act (9 U.S.C. § 10(a)) provides four grounds for vacatur of an arbitration award:

(1)   where the award was procured by corruption, fraud, or undue means;

(2)   where there was evident partiality or corruption in the arbitrators, or either of them;

(3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"To these four statutory grounds the First Circuit has added a common-law ground for vacatur when the arbitrator displays 'manifest disregard' for the law."

*Prospect East Holdings, Inc. v. United Nurses & Allied Professionals, Inc.*, C.A. No. 18-671-JJM-PAS, 2019 WL 2929707, *2 (D.R.I. July 8, 2019) (quoting *Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc.*, 863 F.3d 90, 94-95 (1st Cir. 2017)).[4]

## III.  DISCUSSION

The Employer's Complaint asks this Court to invalidate the Arbitrator's award because two aspects of his decision amounted to "manifest disregard of law": (1) his determination that the CBA entitles employees to one-half hour pay instead of a one-half hour paid meal break and (2) his determination that the Employer failed to meet the standard set by the CBA for reducing scheduled shifts from eight hours to seven-and-a-half hours.  ECF No. 9-1 at 12.

"Manifest disregard occurs when an arbitrator ignores the plain language of a contract or knowingly disregards law applicable to the dispute." *Prospect East Holdings, Inc.*, 2019 WL 2929707, at *2 (D.R.I. July 8, 2019) (citing *Advest, Inc. v. McCarthy*, 914 F.2d 6, 9 (1st Cir. 1990)).

The Employer raises several issues with the Arbitrator's award for both findings that we will now take up in turn.

---

[4] The First Circuit has left open whether the "manifest disregard" standard should continue to operate given the Supreme Court's decision in *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576 (2008), which has "thrown into doubt" its continued existence as a ground for vacatur. *Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 46 (1st Cir. 2017) (quoting *Bangor Gas Co. v. H.Q. Energy Servs. (U.S.) Inc.*, 695 F.3d 181, 187 (1st Cir. 2012)).  Since *Hall*, the First Circuit has continued to apply the standard when it finds that it is not met and leaves the question of its validity for another day.  Because we find that the award should be upheld, we will follow the same track here.

A. **Whether the Arbitrator's Determination that 30-minute Pay Was a "Past Practice" Creating a CBA Benefit Constituted a Manifest Disregard of Law**

The Employer argues that the Arbitrator's determination that the practice of giving 30-minute pay instead of a paid 30-minute meal break to employees working eight hours or more was in "manifest disregard" of Section 14.10 of the CBA:

> All Employees shall receive a twenty (20) minute paid break for any shift up to six (6) hours or more and an additional twenty (20) minute break beyond six (6) hours up to eight (8) hours.  Employees who work eight (8) hours or more in one day shall be entitled to a one-half hour paid lunch/dinner break.

ECF No. 1-2 at 32

### *The Law of the Shop*

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581-82 (1960).  Such practices "must be so well known, uniform, long-established, and generally acquiesced in so as to induce the belief that the parties contracted with reference to it, *nothing in their contract to the contrary.*"  *Georgia-Pacific Corp. v. Local 27, United Paperworkers Intern. Union*, 864 F.2d 940, 946 (1st Cir. 1988) (citing *Dahly Tool Co. v. Vermont Tap & Die Co.*, 742 F.2d 311, 314 (7th Cir. 1984)) (emphasis added).  Meanwhile, an arbitrator may not ignore the unambiguous "plain language" of a CBA.  *Strathmore Paper Co. v. United Paperworkers Intern. Union, AFL-CIO*, 900 F.2d 423, 426-27 (1st Cir. 1990).

*Defer to Arbitrator Expertise*

Taking all these rules together and recognizing the fact that we must defer to the Arbitrator's factual finding that the past practice existed, *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987), the Employer must show that there was something in the contract "to the contrary," and that the CBA was unambiguous in displacing the practice of providing meal pay instead of a paid meal break. The contract does no such thing. The provision at issue: "[e]mployees who work eight (8) hours or more in one day shall be entitled to a one-half hour paid lunch/dinner break," is an entitlement not a restriction. That one is entitled to a benefit does not mean they may not receive any other benefit in its place. The provision cannot be read as unambiguously displacing the alternative benefit of 30 minutes of meal pay from being provided instead of the paid meal break.

The Employer appears to posit that the Arbitrator's award was merely interpreting the language of Section 14.10.[5] In fact, the Arbitrator found that the 30-minute pay was a part of the CBA solely because it qualified as past practice; he never

---

[5] In an apparent attempt to suggest that the Arbitrator's decision amounted to an interpretation of this provision rather than a finding that the benefit was an additional and separate part of the agreement, the Employer notes that "the Union acknowledged, and the Arbitrator apparently recognized, that the second sentence of Section 14.10 was 'at the center of this case' . . . ." ECF No. 9-1 at 13 (citing ECF No. 1-4 at 7). Yet read in context, the Arbitrator was merely introducing the topic, as he then described how the additional 30-minute pay emerged as an alternative to the benefit provided in that provision. This statement does not imply that the 30-minute pay benefit eventually found to be a part of the CBA by the Arbitrator stemmed from Section 14.10. The Arbitrator was merely noting that the controversy that gave rise to this "past practice" related to this provision of the contract.

invoked Section 14.10 to find that this benefit existed in the contract. *See* ECF No. 1-4 at 25 (finding that all three conditions for finding past practice were met).[6]

The Arbitrator's award also did not contravene Section 7.4 of the CBA, which sets out that it is improper for an arbitrator "to amend or modify this Agreement, [or] to establish new terms or conditions of employment, [or] to add to, subtract from, or otherwise enlarge or unduly restrict this Agreement." ECF No. 1-2 at 14. As stated, past practice is considered part of the CBA, even if it is not explicitly included in it. *United Steelworkers of America*, 363 U.S. at 581-82. Thus, finding that employees were entitled to the benefit based on past practice amounted to identifying an existing part of the agreement, not altering it in the manner prohibited by Section 7.4.

This case differs from others in which courts have overturned arbitrator awards because they contravened unambiguous terms in a CBA. *See, e.g., S.D. Warren Co., Div. of Scott Paper Co. v. United Paperworkers' Int'l. Union, Local 1069*, 845 F.2d 3 (1st Cir. 1988) (finding that the arbitrator violated the "narrow standard of review" for arbitrator awards by changing the remedy handed down by the employer for an employee's violation of the CBA where the contract explicitly reserved the right to determine the remedy to the employer). Here, the Arbitrator

---

[6] Employer argues in the alternative that the Arbitrator erred in finding a "past practice" because the practice was "extinguished when Twin River Management Group acquired Newport Grand in 2015 or, if not then, certainly when Newport Grand closed in August 2018." ECF No. 9-1 at 18. But as stated, the evidence here shows that the Employer continued the practice even after moving its operations to Tiverton. ECF No. 13-2 at ¶ 7-8. Even so, the finding of a past practice was a factual determination by the Arbitrator that we must defer to, even if we were to disagree with it. *Misco*, 484 U.S. at 38.

acted within his authority in finding that a past practice created an entitlement to receive a different benefit for working eight hours or more instead of a separate benefit provided for in the CBA.

### B. Whether the Arbitrator Erred in Finding that Reducing Employee Hours from Eight to Seven-and-a-Half Violated the CBA

The Employer next contends that it was a manifest error of law for the Arbitrator to require it, in justifying its reduction of employee hours from eight to seven-and-a-half, to introduce evidence showing that allowing employees to keep working eight hours would "affect the efficiency and continued existence of the operation." ECF No. 1-4 at 25.

They argue that in finding this standard, the Arbitrator misinterpreted Section 4.1 of the CBA: "The EMPLOYER reserves the right itself to . . . determine the schedules of work including holidays, to discipline Employees for just cause which, in the judgment of the EMPLOYER *may affect the efficient operation of the business . . . .*" ECF No. 1-2 at 9 (emphasis added).

The Court reiterates that it is not interpreting the CBA *de novo*. Instead, its only task is to determine whether the Arbitrator's interpretation contravened the plain language of the CBA. Moreover, "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the *meaning of the contract* that they have agreed to accept." *Misco*, 484 U.S. at 37-38 (emphasis added). As long as the arbitrator's interpretation of the contract is "in any way plausible," it must be upheld. *Labor*

*Relations Div. of Constr. Indus. v. Int'l Bhd. Teamsters, Local No. 379*, 29 F.3d 742, 745 (1st Cir. 1994).

First, the Employer argues that the Arbitrator's interpretation was in manifest disregard of the law because his standard required proving an effect on both the "efficiency" and the "continued existence" of the operation when the CBA only explicitly mentions the former.  ECF No. 1-4 at 25  But as the Union correctly states, this is exactly the type of "hairsplitting" that is inappropriate under the standard of review for these cases.  ECF No. 15 at 2.  Given that there is not a significant difference between proving an effect on the "efficiency" and the "continued existence" of the operation, the Arbitrator was well within his right to set this standard.  The use of this standard is not explicitly disclosed by the plain language of the contract.

The Employer also urges that the Court should overturn this aspect of the Arbitrator's decision because his interpretation of Section 4.1 does not follow the "rule of the last antecedent," which "takes the last modifying phrase . . . and only applies it to the last item in the list."  *Ernest G Pullano, PA v. Rhode Island Div. of State Fire Marshal*, No. CV 20-20-JJM-PAS, 2020 WL 4601668, at *2 (D.R.I. Aug. 11, 2020).  On this basis, they contend that the condition related to the efficient operation of the business only applied to the clause that immediately preceded it (relating to the Employer's right to discipline employees) and none of the others that came before it (including the Employer's right to determine work schedules).

It would defy our narrow standard of review to vacate the award because the Arbitrator did not closely conform to canons of statutory construction in interpreting

the contract. That the condition identified by the Arbitrator appeared in the list and followed the clause giving the Employer the right to determine "schedules of work" is enough to find that the Arbitrator's interpretation was plausible.

### C.     Enforcement of Remedy

The Employer argues that the Arbitrator is precluded from taking any further action on this labor dispute under the common-law doctrine of "*functus officio*." At common law, the Employer argues, "when the arbitrators have executed their award and declared their decision they are '*functus officio*' and, in the absence of the parties' consent, have no power to proceed further, even to the extent of interpreting their previously entered award." *Locals 2222, 2320-2327, Int'l Bhd. of Elec. Workers, AFL-CIO v. New England Tel. & Tel. Co.*, 628 F.2d 644, 647 n.5 (1st Cir. 1980). The Union counters that enforcement of the remedy does not require the arbitrator to "reverse or substantially alter his ruling." *Local 2322, Int'l. Bhd. of Elec. Workers v. Verizon New England, Inc.*, 464 F.3d 93, 97 (1st Cir. 2006). "Strong authority in this circuit (and in other jurisdictions) holds that a labor arbitrator may, for example, 'interpret or amplify' his award, *functus officio* notwithstanding. *Red Star Exp. Lines v. Int'l Bhd. of Teamsters, Local 170*, 809 F.2d 103, 106 (1st Cir. 1987) (quoting *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 278–80 (1st Cir.1983) (arbitrator may reopen proceeding in which he had ordered back pay award to "senior journeyman" in order to identify journeyman and specify amount of back pay)).

It is not clear to the Court what the dispute here is. As stated above, the Court affirms and enforces the Arbitrator's award, including the remedies in the award.

The employer is ordered to cease and desist from the prohibited practice of reducing the hours, and the employer shall make all employees whole for their lost wages and benefits. ECF No. 1-4 at 28. Any question of what other or further jurisdiction the Arbitrator possesses is not justiciable now.

### D.   Attorney Fees and Costs

The Union seeks an award of attorney fees and costs under Rhode Isnad statutory law. Rhode Island General Laws § 28-9-18(c) provides that "[i]f the motion to vacate, modify, or correct an arbitrator's award is denied, the moving party shall pay the costs and reasonable attorneys' fees of the prevailing party." The Union asserts that Twin River brought this action in part on state law. ECF No. 12-1 at 23 (citing ECF No. 1 at ¶ 3)  Therefore, the Union argues, an award of counsel fees and costs is appropriate, and it should be permitted to file an appropriate motion. *See also Hoolahan v. IBC Advanced Alloys Corp.*, 947 F.3d 101, 117 (1st Cir. 2020) (federal court may apply state law allowing attorneys' fees).

Twin River counters that this litigation comes to the Court by way of the Labor Relations Management Act and the Federal Arbitration Act and "neither the LMRA nor the Federal Arbitration Act authorize the award of attorneys' fees in an action to confirm an arbitration award . . . ." *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Allied Design & Constr., LLC*, 217 F. Supp. 3d 671, 676 (E.D.N.Y. 2016).

The Employer's Complaint alleges pendent jurisdiction, along with its federal claims. ECF No. 1 ¶ 3 ("This is a complaint to vacate a labor arbitration award, and

as such, jurisdiction exists under the Labor Management Relations Act, 29 U.S.C. § 185, federal question jurisdiction, 28 U.S.C. § 1331, *and the pendent jurisdiction of this Court.*") (emphasis added).  Pendent jurisdiction here means the federal court's ancillary jurisdiction over state law claims.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 720 (1966) ("The state law claim, for which jurisdiction was based upon the doctrine of pendent jurisdiction . . .")

Because the complaint, at least in part, was based on Rhode Island state law, Rhode Island General Laws § 28-9-18(c) applies, entitling the Union to its costs and reasonable attorneys' fees.

## IV.   CONCLUSION

With mandated deference to an Arbitration Award, this Court GRANTS the Defendant Union's Motion for Summary Judgment (ECF No. 12) and DENIES the Plaintiff Employer's Motion for Summary Judgment (ECF No. 9).


IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

November 30, 2020